### No. 8749.

The Durango Trust Co., Ex't'r of Strawn *v.* Campbell.

Decided October 8, 1917.  Rehearing denied December 3, 1917.

Action for contribution by surety against co-surety on a promissory note. Judgment for defendant.

#### *Affirmed.*

1. Contribution—*Sureties on Promissory Note.* A surety who claims contribution because he has paid the common obligation, can not recover against the co-surety if the payment so made was under and in consideration of an independent agreement between the principal and surety so paying.

2. REAL PROPERTY—*Unacknowledged Deed.*   An executed, but unacknowledged deed, if delivered, is sufficient to pass title.

*Delivery of Deed—What Constitutes.*   The very essence of the delivery of a deed is the intention of the parties, which is to be gathered from their conduct and the surrounding circumstances.

*Error to the District Court of La Plata County, Hon. W. N. Searcy, Judge.*

Messrs. PERKINS & MAIN, for plaintiffs in error.

No appearance for defendant in error.

*En banc.*

MR. JUSTICE BAILEY delivered the opinion of the court.

PLAINTIFF and defendant below were co-sureties upon a note for $1,000.00, of which one Whitney was the maker. Shortly before the note was due Whitney notified plaintiff, Strawn, that he would not be able to pay the note at maturity, and offered to deed to Strawn certain land in return for which Strawn was to discharge the note, sell the land, reimburse himself, clear the land of a certain incumbrance and turn over the surplus, if any, to Whitney. Later it appears that Strawn determined to take the land himself, but the testimony is in conflict as to whether the terms of this transaction were agreed to by Whitney. Strawn paid the note, however, and later took possession of the land and put in a crop. A deed was executed by Whitney, though not acknowledged, nor did it set out the incumbrance upon the land. The testimony is conflicting as to whether the deed was delivered. It was never recorded, but a tax schedule prepared by the proper county officer, dated some six weeks after the deed was signed by Whitney, lists the land described therein as the property of Strawn, who later paid part of the taxes.

Some time after Strawn took possession of the land a flood washed out his entire crop and greatly diminished, if not entirely destroyed, the value of the tract for agricultural purposes. It was after this freshet that suit was

brought to compel contribution.  Judgment was entered for defendant, and plaintiff brings the cause here for review on error.

The errors assigned are to the giving of certain instructions, the refusal to give others in their stead, and the insufficiency of the verdict.  It is urged that, although defendant's answer alleged a sale by Whitney to plaintiff, the court admitted evidence tending to show negotiations for a sale only, and in effect told the jury that such evidence would support the defense.  It is also contended that the court in effect instructed the jury that if negotiations were had in accordance with which Strawn agreed to pay the note, and the incumbrance on the land, in exchange for the land, that the defendant was released even though the land was encumbered for more than represented, and although the minds of the parties to the contract of purchase were never in full agreement.

The instruction containing these alleged errors is as follows:

"Instruction No. 5.  The court further instructs you that if you find from a preponderance of the evidence in this case that the plaintiff Strawn and said maker of the note, Whitney, entered into an agreement, either orally or in writing, prior to the time of the payment of the said note by Strawn, under which agreement the said Whitney was to convey to said Strawn certain lands by a sufficient deed of conveyance, and subject only to the Riggle mortgage, and that as consideration or part of the purchase price for said lands that the said Strawn, amongst other things, thereunder agreed to pay the said Whitney note in question, and that under said agreement the said Strawn entered into possession of said land as an owner thereof, and voluntarily paid said note as a part of the purchase price for said lands, and not merely because of his obligation as surety, then your verdict should be for the defendant, even though the said Whitney may have thereafter failed to execute and deliver a sufficient deed of conveyance, or to clear the land of a second trust deed.  In such case the remedy of the

plaintiff for any failure on the part of said Whitney would be against said Whitney and not against said Campbell."

Upon the facts shown by the record the above instruction correctly states the law. It is elementary that a surety who claims contribution because he has paid the common obligation cannot recover against the co-surety if the payment so made was under and in consideration of an independent agreement between the principal and the surety so paying. There can be no dispute that Strawn paid the Whitney note as part of the purchase price of the land covered by Whitney's executed but unacknowledged deed. Such a deed, if delivered, is sufficient to pass title. *Knight v. Lawrence,* 19 Colo. 434, 36 Pac. 242. It is contended, however, that no delivery was made. It seems that the instrument was never permanently in Strawn's possession, but the disposition made of it by the parties may well have been considered a delivery in law. In *Brinker v. Malloy,* 53 Colo. 186, (125 Pac. 507), this court, at page 189 held: "The very essence of the delivery of a deed is the intention of the parties, which is to be gathered from their conduct and all the surrounding circumstances." In the instant case Whitney executed the deed and left it with the scrivener. Strawn, after discovering that it had not been acknowledged, left it in the same hands, presumably until it had been formally acknowledged. There was also some objection to it on Strawn's part because the trust deed covering the property had not been set out in the deed. In the meantime, however, he entered into possession of the land, permitted it to be assessed to him, paid taxes on it, planted a crop, and exercised other acts of ownership. Not until the flood materially lessened its value did he attempt to repudiate the transaction.

He then alleged that there was a second trust deed on the land, about which he knew nothing at the time of making the agreement with Whitney, and for that, and other reasons, the minds of the parties had not met, and that therefore there was no sale or purchase of the land.

It appears that there was such second trust deed, for $500.00; it also appears that there was a chattel mortgage between the same parties, for the same sum, and to secure the same note, and there is testimony to the effect that a considerable amount of this indebtedness was paid by Whitney, and that he was ready and able to pay the remainder. He also testifies that he was and is ready to execute another deed for the land according to agreement.

In any event it is manifest by the record, that Strawn as co-surety paid the obligation of his principal not by reason of his obligation as such surety, but in consideration of an independent agreement with Whitney for his own benefit.  The judgment of the trial court will be affirmed.